RECEIVERSHIP OF OSCEOLA MILLING COMPANY.

### Kansas City Court of Appeals, May 30, 1898.

1. **Receivers; PAYMENT: JUDGMENT.** A judgment obtained after the appointment of a receiver and not enforcing a prior lien has no priority over other debts of the estate.

2. **———: PAYMENT OF DEBTS: PROTECTION: ORDER OF COURT.** A receiver is a mere arm of the court and neither he nor the court can arbitrarily create a preference of creditors, though an erroneous order of the court will protect the receiver; but without an order he assumes responsibility and unless the payment is right, is responsible therefor.

*Appeal from the St. Clair Circuit Court.*—HON. JAMES H. LAY, Judge.

REVERSED AND REMANDED (*with directions*).

WM. H. MARTIN for plaintiff.

(1) The $358 paid John L. Woolfolk on April 17, 1895, by this receiver was to satisfy a judgment obtained after the appointment of said receiver, and therefore possessing no priority. Att'y–Gen. v. Ins. Co., 28 Han (N. Y.) 360; Elliott v. Ins. Co., 7 Gill. (M. D.) 307; Jackson v. Lahee, 114 Ill. 287; 20 Am. and Eng. Ency. of Law, pp. 186, 187. The payment of this judgment was the payment of debt and not an expenditure incident to receivership or necessary to preserve estate, and in making such payment receiver had no discretion whatever. 20 Am. and Eng. Ency. of Law, p. 112. (2) The $270 paid the Clardy heirs

was neither the payment of a debt nor such an expenditure as law countenances. It was in the nature of a dividend, and that to one in nowise entitled to same. See authorities before cited.

S. A. WARDEN and T. O. WILLIAMS for respondent.

(1) Respondent was appointed receiver of the Osceola Milling Company, not for the creditors but on the application of the stockholders of said company while its business was being continued and therefore a "going concern." As receiver for such "going concern" he had a right to collect its assets and pay its debts and so long as he acted in good faith he could pay a debt although such payment might operate as a preference of one creditor to another. Hence in the absence of a claim of bad faith there was no error in the judgment of the circuit court in allowing the receiver the $358 paid on judgment to John L. Woolfolk. The laws and decisions of Missouri are conclusive upon this point. Alberger v. Bank, 123 Mo. 313; Slavens v. Drug Co., 128 Mo. 341. (2) The receiver of such going concern had a right to pay and the court to allow Laura and Cora Clardy a reasonable compensation for their expenses and services in assisting him to collect and preserve the assets of said company, and also reasonable attorneys' fees and for similar services and other expenses. White v. Land Co., 49 Mo. App. 450; Revised Statutes 1889, Code Civil Procedure, art. 7, secs. 2193, 2194, 2195; Alberger v. Bank, 123 Mo. 313; Mill Co. v. Kampe, 38 Mo. App. 229; Slavens v. Drug Co., 128 Mo. 341; 123 Mo. 313; White v. Land Co., 49 Mo. App. 450.

ELLISON, J.—John W. Greeson was duly appointed receiver of the Osceola Milling Company, a corpora-

tion, by the circuit court of St. Clair county. Afterward the assignee of the St. Clair County Bank obtained judgment for $358 against the milling company and assigned it to one Woolfolk. The receiver paid this judgment to Woolfolk without an order of court. Afterward the court allowed the receiver credit for such payment over the objection of other judgment creditors.

RECEIVERS: payment: judgment.

The judgment having been obtained after the receiver was appointed and not being for the enforcement of any prior lien, had no priority over other debts against the milling company. Attorney-General v. Ins. Co., 28 Hun. 360; Jackson v. Lahee, 114 Ill. 287. There being therefore no extraordinary circumstances, equitable or otherwise, for the payment of this judgment to the exclusion of, or in preference to other claims, its payment was unwarranted and the receiver should not have credit therefor.

——; payment of debts: protection: order of court.

It was a hazardous matter for the receiver to make the payment without an order of the court. He is an officer of the court and has possession of the property received by him to be administered by the court for the equal benefit of those entitled to the property or its proceeds. He is but the "arm of the court" and the property held by him is *in custodia legis*. Neither he nor the court can arbitrarily create a preference of creditors. The property must be administered according to the rights of the parties under the law, the receivership being not inaptly termed an equitable assignment for the benefit of creditors. If the receiver had applied to the court for direction and had been ordered to pay the judgment to Woolfolk he would have been protected even though the order was erroneous. But when he paid without an order, he took upon himself the

responsibility and unless the payment was right under the law, he will be responsible for a misapplication of funds.

As we gather the contention of the receiver, it is that the milling company was not hopelessly insolvent, that it was "a going concern" and that therefore Woolfolk could be made a preferred creditor. He cites us to the cases of Alberger v. Bank, 123 Mo. 313, and Slavens v. Drug Co., 128 Mo. 341, to show that a corporation, like an individual, may prefer creditors and that it may do so though in an embarrassed and insolvent condition. Those cases do hold that a corporation in such condition can make a preference of creditors. But the law, as thus declared, is based on the assumption that the corporation is in possession of the property of the corporation. Certainly it ought not to be thought that the corporation could make such preference when its property and assets have been wrested from it and placed *in custodia legis*. In such case the *jus disponendi* is gone. The cases cited have no application here.

It appears that the receiver made a payment to two heirs of one James Clardy, deceased, of $270 and this was allowed him as a credit in his settlement. We have not been able to discover any authority for this allowance. It is sought to uphold it on the ground of an expenditure by the receiver in preserving the property in his hands. Whatever service these heirs may have performed was before the appointment of a receiver. Besides it appears that Clardy was one of the principal stockholders in the milling company and these heirs inherited the stock whatever it might amount to. It is certain that what they might have done before the receivership was merely an interest in their own inheritance. The record is not as clear as it should be, but

a perusal of it as it is has failed to show any possible legal ground for this allowance.

The judgment will be reversed and cause remanded with directions to disallow the claims to the receiver. All concur.