FOSTER, *Appellant,* v. MULLANPHY PLANING MILL COMPANY.

1. **Corporation:** PREFERRING CREDITORS: DIRECTORS. A corporation, within the scope of the purposes for which it was incorporated, may do any act in furtherance of those purposes which an individual in like circumstances may do, and although insolvent, it may prefer some creditors to others, even though such creditors are among the directors of the corporation.

| 92 | 79 |
| 36a | 297 |
| 38a | 233 |

| 92 | 79 |
| 39a | 141 |

| 92 | 79 |
| 45a | 513 |
| 47a | 464 |

| 92 | 79 |
| 49a | 466 |

| 92 | 79 |
| 114 | 601 |
| 116 | 323 |
| 92 | 79 |
| 118 | 264 |

| 92 | 79 |
| 122 | 158 |
| 123 | 322 |

| 92 | 79 |
| 126 | 401 |
| 128 | 489 |

| 92 | 79 |
| 130 | 195 |
| 131 | 290 |

| 92 | 79 |
| 133 | 498 |

| 92 | 79 |
| 138 | 584 |
| 139 | 477 |

| 92 | 79 |
| 143 | 134 |
| 144 | 336 |

Foster v. Mullanphy Planing Mill Co.

2. ———— : ———— : BONA FIDE CONVEYANCE. If the conveyance giving the preference is *bona fide*, it will prevail against an attachment by a creditor of the debtor, and it is immaterial that the effect of the conveyance is to hinder or delay other creditors.

3. **Corporation**: DEED OF TRUST TO SECURE DEBTS, PARTICIPATION IN BY DIRECTORS WHO ARE CREDITORS. A deed of trust given to secure certain creditors of the corporation, *held* valid against the objection that it gave a preference to, and secured the debts of, four of the directors who participated in the resolution of the board authorizing its execution.

4. ———— : ————. A *quorum* of a majority of the board of directors was sufficient for the passage of the resolution.

5. **Corporate Assets**: ENFORCEMENT OF TRUST: FORUM. Corporate assets being a trust fund, the *forum* for its enforcement is a court of equity, and this is especially true where they constitute a joint trust fund for all its creditors.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED

*Charles B. Stark* for appellant.

(1) The only question before the court on an issue in a plea in abatement to an attachment, alleging that the defendant has fraudulently conveyed or assigned his property, is whether he has so conveyed or assigned his property, and it is, therefore, entirely immaterial whether the trustee, Schureman, has any title to the property conveyed here. *Enders v. Richards*, 33 Mo. 598. (2) The directors of a solvent corporation are trustees for the shareholders, and are subject to all the duties and disabilities of trustees. *McAllen v. Woodcock*, 60 Mo. 174; *Lingle v. Hogan*, 45 Mo. 109; *Bent v. Priest*, 10 Mo. App. 543-7; s. c., 86 Mo. 475; *Skrainka v. Allen*, 7 Mo. App. 434; *Brewster v. Stratman*, 4 Mo. App. 41; *Cumberland Coal Co. v. Sherman*, 30 Barb. 553; *Koehler v. Black River Falls Iron Co.*, 67 U. S. [2 Black] 715; *Sawyer v. Hoag*, 84 U. S. [17 Wall.] 610; *Jackson v. Ludeling*, 88 U. S. [21 Wall.] 616;

*Wardell v. Railroad*, 103 U. S. [13 Otto] 651 ; *Railroad v. Howard*, 74 U. S. [7 Wall.] 392, 409 ; *Hoyle v. Railroad*, 54 N. Y. 315–28–29–30 ; *Coleman v. Railroad*, 38 N. Y. 201 ; *Bliss v. Matteson*, 45 N. Y. 22. (3) The directors of an insolvent corporation are trustees for the benefit of its creditors. *Railroad v. Howard*, 74 U. S. [7 Wall.] 392, 409 ; *Lingle v. Hogan*, 45 Mo. 109–10 ; *Skrainka v. Allen*, 7 Mo. App. 434–8–40 ; *Eyerman v. Krieckhaus*, 7 Mo. App. 455 ; *Chouteau v. Allen*, 70 Mo. 290, 338 ; *Jones v. Mech. Co.*, 38 Ark. 17 ; *United Soc. v. Underwood*, 9 Bush [Ky.] 609 ; *Gaslight Imp. Co. v. Terrell*, 39 Law J. Chan. 725 ; s. c., 10 Eq. Cases [Law Rep.] 168–76 ; *Sykes Cases*, 13 Eq. Cases [Law Rep.] 255–59–60 ; Morawetz Priv. Corp., secs. 246, 579–82 ; Thompson Liab. Off. and Agts., p. 397, sec. 23. (4) A trustee will not be permitted to create such a relation between himself and the trust property as will make his own interest antagonistic to that of his beneficiary. *Lingle v. Hogan*, 45 Mo. 109 ; *McAllen v. Woodcock*, 60 Mo. 174 ; *Bent v. Priest*, 10 Mo. App. 543–57 ; s. c., 1 West. Rep. 749 ; 86 Mo. 475 ; *Skrainka v. Allen*, 7 Mo. App. 434 ; *Brewster v. Stratman*, 4 Mo. App. 41 ; *Koehler v. Iron Co.*, 67 U. S. [2 Black] 715 ; *Jackson v. Ludeling*, 88 U. S. [21 Wall.] 616 ; *Sawyer v. Hoag*, 84 U. S. [17 Wall.] 610 ; *Wardell v. Railroad*, 103 U. S. [13 Otto] 651 ; *Haywood v. Lumber Co.*, 26 N. W. Rep. [Wis.] 184. (5) The execution of the deed of trust in question, by the board of directors of the respondent, to secure to four of their number a preference in the payment of pre-existing debts over the general creditors of the corporation was a breach of the duty which they owed to the general creditors, their *cestuis que trust*, and was, therefore, fraudulent as against them. See authorities cited under points 2, 3, and 4. (6) The term fraud, as understood in the statute concerning fraudulent conveyances, has the same meaning in the attachment law ; and it is

not necessary to show that the act originated in any premeditated design to commit a positive fraud, or to injure other persons. *Reed v. Pelletier*, 28 Mo. 173; *Beach v. Baldwin*, 14 Mo. 597. (7) When one makes a conveyance of his property to hinder, delay or defraud his creditors, a trust results thereby in their favor, and the deed, as against them, is "utterly void," and such property may be seized on attachment or execution at law against him, and sold. R. S., 1879, sec. 2497; *Ryland v. Callison*, 54 Mo. 513; *Allen v. Berry*, 50 Mo. 90; *Potter v. McDowell*, 31 Mo. 62. (8) The deed of trust in question is void as against the plaintiff, because the resolution authorizing its execution was adopted by the votes of directors interested in its execution. *Patrick v. Gas Co.*, 17 Mo. App. 462; *Bennett v. Roofing Co.*, 19 Mo. App. 349; *Butts v. Wood*, 37 N. Y. 317; *Coleman v. Railroad*, 38 N. Y. 201; *Chamberlain v. Wool Co.*, 54 Cal. 103; *Haywood v. Lumber Co.*, 26 N. W. Rep. [Wis.] 184; *Lippincott v. Shaw Carriage Co.*, 25 Fed. Rep. 577.

*Leonard Wilcox* and *H. J. Grover* for respondent.

(1) A corporation which is insolvent merely—as well as a partnership or individual—can prefer one creditor to another. 2 Morawetz on Corp. [2 Ed.] sec. 786; *Catlin v. Bank*, 6 Conn. 233, 241; *Pondville & Co. v. Clark*, 25 Conn. 97; *Maryland v. Bank*, 6 Gill and J. 219, 220; *Poole's Case*, 9 Ch. L. Div. R. 322, 328; *St. Louis v. Alexander*, 23 Mo. 483, 524; *Shelley v. Boothe*, 73 Mo. 77; *Dougherty v. Cooper*, 77 Mo. 528. (2) It is a settled doctrine (in Missouri at least) that a director in a corporation has a right to deal with such corporation in any way that any other person can. *St. Louis v. Alexander*, 23 Mo. 527, 531; *Kitchen v. Railroad*, 69 Mo. 243, 245, 254 and 255; *Buell v. Buckingham*, 16 Iowa, 284; *Bank v. Whittle*, 18 Rep. 566; *Smith v. Skeary*, 47 Conn. 54; *Whitwell v. Warner*, 20

Vt. 444–5; *Gordon v. Preston*, 1 Watts, 387; *Twin Lick Oil Co. v. Marburg*, 1 Otto, 587; *Duncomb v. Railroad*, 84 N. Y. 199, 207. (3) The resolution, pursuant to which the deed of trust was executed, was passed by the votes of a sufficient number of disinterested directors to make it valid as a corporate act. R. S., 1879, sec. 730. (4) If when the directors committed the act, which is alleged to constitute a constructive fraud, they held the corporate assets in trust for the creditors, then such act would not constitute constructive fraud on the part of the company, nor sustain an attachment against it. *Goodwin v. Kerr*, 80 Mo. 226; *Pinney v. Hart*, 30 Mo. 561, 569; *Douglas v. Cinna*, 17 Mo. App. 61. (5) Even if the act of the directors complained of was constructively fraudulent it would be voidable merely and not void, and so far as reclaiming the property is concerned the only remedy would be a direct proceeding against the persons holding the legal title to the property to set the conveyance aside, the right to bring which proceeding would be primarily in the company. *Bowlin v. Furman*, 28 Mo. 432; *Kitchen v. Railroad*, 69 Mo. 260; *Buell v. Buckingham*, 16 Iowa, 293; *Poole's Case*, 9 Ch. Div. L. R. 222; *Brewer v. Theater Co.*, 104 Mass. 378. (6) If, by reason of the insolvency merely of the defendant, its assets became a trust fund for creditors, it was a joint trust for all its creditors and cannot be enforced by plaintiff in a suit at law. Morawetz on Corp. [2 Ed.] sec. 784; *Edwards v. Welton*, 25 Mo. 379; *Craig v. Gregg*, 83 Pa. St. 19; *Grear v. Gouge*, 69 N. Y. 154; Thompson on Liability of Officers, etc., 257; *Fusz v. Spaunhorst*, 67 Mo. 264; *Smith v. Poor*, 40 Me. 422; *Pond v. Framingham*, 130 Mass. 194. (7) The liability of a principal to indemnify and secure his surety or accommodation indorser is a debt contracted from the time the surety is given. *Rice v. Southgate*, 16 Gray, 142; *Bayer v. Coal Co.*, 106 Mass. 131; *Duvall v. Raisin*, 7 Mo. 450.

SHERWOOD, J.—Action brought August 9, 1883, on four promissory notes for $1600 each, dated September 14, 1881, and maturing in two, three, four and five years after date. At the time of filing his petition, plaintiff sued out an attachment, based on the grounds that the defendant had fraudulently conveyed and assigned, and had fraudulently disposed of its property and effects, so as to hinder and delay its creditors. Schureman and Gibson were summoned as garnishees. Defendant, in usual form, pleaded an abatement of the attachment. The issues thus raised were submitted on the following agreed statement of facts :

"1. That the defendant is a corporation, duly organized under the laws of the state of Missouri.

"2. That on the fifth day of May, 1883, the defendant executed and delivered the deed of trust, hereinafter mentioned, to Jos. P. Schureman, to secure certain indebtedness in said deed of trust described ; which deed of trust was executed under authority of a resolution of defendant's board of directors, passed April 30, 1883.

"3. The number of the directors of defendant company was fixed at thirteen persons, and on the said thirtieth day of April, 1883, the following persons constituted the board of directors of the defendant: F. Lohse, H. Richter, H. Sunderman, F. Rose, H. H. Bruning, J. Nieman, F. Germer, Wm. Nolkemper, I. G. Twiehaus, W. A. Stender, C. H. Meyer, Henry Giese, and William Piel, all of whom, except Giese and Piel, the two last named, were present when the said resolution authorizing the execution of said deed of trust was adopted. All of said directors, so present, voted in favor of said resolution, excepting J. Nieman, who voted against it.

"4. That defendant's note for $2,500, due May 21, 1883, mentioned in said deed of trust, was endorsed jointly by F. Germer, Meyer & Stip, William Leori, and

John Stoeppelworth, for the accommodation of said defendant, and discounted by the defendant at the Mullanphy Savings Bank, and that the defendant received the entire net proceeds, in cash, of said note, so discounted, and used the same in carrying on its business. That this note, at the time said deed of trust was executed and delivered, was held and owned by the Mullanphy Savings Bank.

"5. That, at the maturity of said note, on or about May 21, 1883, the said accommodation endorsers, their liability having become fixed by protest, took up and paid said note by substituting therefor their own note, which was accepted by said bank in payment thereof; and defendant, failing to pay its note when due, the endorsers aforesaid paid it, and became, and ever since have been, the owners and holders thereof.

"6. That the note mentioned in said deed of trust for $674.70, due May 30, 1883, and payable to Meyer & Stip, was given for money loaned to defendant by said Meyer & Stip.

"7. . That the said C. H. Meyer, who was one of the aforesaid directors of the defendant, was a member of the firm of Meyer & Stip, to whom said last-mentioned note was payable, and who were endorsers on said twenty-five hundred-dollar note.

"8. That F. Germer, having an open account against the defendant for $236.00, William Nolkemper, having an open account against the defendant for $47.35, and W. A. Stender, having an open account against the defendant for $33.15, all of which accounts were included in and secured by said deed of trust, are the same persons who were members of said board of directors aforesaid, and the said Germer is the same person of that name who was also endorser on said twenty-five hundred-dollar note.

"9. That all the indebtedness mentioned in and secured by said deed of trust, was a *bona fide* liability

of said defendant to the persons and in the amount therein named and as therein expressed, existing at the time said deed was executed.

"10. That section five, of article three, of the by-laws of the defendant, is as follows: 'A majority vote of the board of directors shall, at all times, determine the action of that body.'

"11. The deed of trust aforesaid is hereby offered in evidence and shall be considered a part of this agreed statement of facts. All questions of competency and relevancy of said deed are reserved, but its execution is admitted.

"12. That the said claims of said F. Germer for $236.00, of W. A. Stender for $33.15, and of said William Nolkemper for $47.35, mentioned in the said deed of trust, were for labor done and performed by said persons, respectively, for said defendant, at its request, for which demand was made by them of defendant, on the day said deed of trust was executed, and said indebtedness accrued within three months next immediately preceding the day on which said demand was made.

"13. That the notes sued on were executed on the fourteenth day of September, 1881, and matured as stated in the affidavit to attachment herein by the defendant, and the plaintiff is the legal holder for collection thereof.

"14. (Unimportant).

"15. That on the day when the said deed of trust was executed, said defendant was insolvent, but said deed was not fraudulent in fact, nor was it executed, or received for the purpose, or with any actual fraudulent intent on the part of the parties thereto, or any of them, or on the part of the board of directors, or either of them, of hindering or delaying any creditor or creditors of said defendant, but said deed was executed and received by said parties in good faith, and for the *bona fide* purpose of securing the claims therein mentioned."

The deed of trust also formed a part of the agreed statement, but it is unnecessary to insert it here.

On this agreed statement the circuit court found the issues for the defendant, and gave judgment accordingly, and the plaintiff appealed to the St. Louis court of appeals, where the judgment was affirmed, and the plaintiff appeals here.

A corporation, within the scope of the purposes for which it was incorporated, may do any act in further-ance of those purposes which an individual in similar circumstances might do, and though insolvent, may pre-fer some creditor to others, even though such creditors are among the directors of the corporation. This doc-trine, first announced in this state in the separate opin-ion of Judge Ryland in *City of St. Louis v. Alexander*, 23 Mo. 524, with that of *Twin-Lick Oil Co. v. Marburg*, 1 Otto, 587, was fully approved by this court in *Kitchen v. Railroad*, 69 Mo. 224, to the extent of holding that such transactions, while sometimes voidable, on timely and direct application to set them aside, were not abso-lutely void, as to such participating directors. And it has been held that the insolvency of a corporation does not *per se* abrogate its power to continue the manage-ment of its assets, but that it may continue in its due course of business, so long as there is a fair and honest prospect of redeeming its fortunes, and may pay off debts in regular course of business, though a part of the cred-itors are thereby deprived of their security. 2 Mora-wetz on Priv. Corp., sec. 786, and cas. cit.

In this case the conveyance attacked as fraudulent, by the proceeding in attachment, was, as already seen, made under a resolution authorized by the directors, April 30, 1883, and was carried into execution on the fifth of May next thereafter. It is insisted that this deed was fraudulent as against the general creditors of the corporation ; that it was made in good faith ; that it was for honest debts, the agreed case concedes. That a

corporation may prefer its creditors must be also conceded, both from the authorities cited, and from numerous others to be found in defendant's brief. Indeed, such a concession is but a necessary corollary from the premises that a corporation, speaking in general terms, may do all that in like circumstances an individual may do; and that an individual may do this, and that his conveyance, if made *bona fide*, will be successful, even against an attachment by the creditors of the debtor, is abundantly settled by our own reports. *Shelley v. Boothe*, 73 Mo. 74, and cas. cit. ; *Dougherty v. Cooper*, 77 Mo. 528, and cas. cit. And the fact that the effect of such conveyance is to hinder or delay other creditors, goes for nothing in the eye of the law. *Ib.*

But the further contention is made that the deed was fraudulent, as against the plaintiff and other creditors, because it gave a preference to, and secured the debts of, four of the directors, who participated in the resolution which authorized its execution. As already seen, the by-laws declared that "a majority vote of the directors shall at all times determine the action of that body." There were present at the time of the adoption of the resolution of April 30, eleven persons, four of whom were directors of the company, interested in the adoption of the resolution, and who participated in its passage. In this case, as the directors were thirteen in number, seven would constitute a majority of the directors and authorized by the by-laws to act.

Treating on this subject, Chancellor Kent says: "There is a distinction taken between a corporate act to be done by a select and definite body, as by a board of directors, and one to be performed by the constituent members. In the latter case, a majority of those who appear may act; but in the former a majority of the definite body must be present, and then a majority of the quorum may decide." Here a majority of the definite body were present, and a quorum of those present,

to-wit, six, did act, and they were sufficient for the passage of the resolution, regardless of the four interested directors who also voted in its favor, and of the other director who voted against it. Thus it has been held that if there are nine directors, five constitute a quorum, and a resolve passed by the majority, at a meeting where at least five are present, is binding on the company. 1 Morawetz on Corp. [2 Ed.] sec. 531, and cas. cit. ; Field on Corp., secs. 238, 239. And it will be presumed that the words, " the majority vote," as employed in the by-laws, were intended to bear the above-mentioned signification, since that, according to the authorities, is the ordinary import of those words. But aside from the authority of precedent, it is provided by section 730, Revised Statutes, that a majority of the directors shall constitute a quorum, and that every decision of a majority of the persons assembled as a quorum, should be valid as a corporate act. Looking at the matter, then, from any point of view, the passage of the resolution must be regarded as the act of the corporation. But there is much force in the point made by the defendant that two of the four directors, said to be interested when voting for the resolution, had claims which, being for labor and services performed by them for the corporation, these claims were already preferred by operation of law, and as such had "preference to any other claim, debts, or demand, whatsoever," etc. R. S., sec. 761. So that eight disinterested directors really voted for the resolution, and gained neither preference nor priority thereby.

In passing to another point, it may be well enough to remark, in reference to the case of *Eppright v. Nickerson*, 78 Mo. 482, that the power of the directors of a corporation to dispose of its assets without the consent of, or even despite the objections of, the shareholders, was recently affirmed by two decisions of this court.

*Chew v. Ellingwood*, 86 Mo. 260 ; *Hutchinson v. Green*, 91 Mo. 367.

Much has been said, and very ingeniously said, by counsel for plaintiff that the directors of the company, it being insolvent, were trustees, and that the assets of the corporation were a trust fund, etc. These premises will readily be admitted. But grant them, grant further, for argument's sake, that a breach of trust has been committed by these directors in manner as aforesaid. How is such official dereliction to be reached ? Is it a constructive fraud within the meaning of the attachment act? Certainly no case has gone to that length. The corporate assets being a trust fund, the *forum* for its enforcement is a court of equity. 2 Morawetz on Priv. Corp. [2 Ed.] secs. 789, 796, and cas. cit.

Moreover, if, in consequence of the insolvency of the defendant company, its assets became a trust fund, it certainly was a *joint trust* for *all* its creditors, and, of course, could not be enforced at law. In this connection it is not to be forgotten that of the beneficiaries named in the deed of trust, some twenty-five of the beneficiaries were general creditors, whose claims were certainly capable of being preferred. Is it possible that these parties can be shorn of their rights in an action at law against the company *alone ?* All that the plaintiff would be entitled to, in any event, even in an equitable proceeding, would be a *pro-rata* share of the corporate assets. Can he, by the present proceedings, gain more *at law* than he could *in equity ?* Even the participating directors, their claims being *bona fide*, could not be deprived of their ratable share of the corporate assets to be applied to the satisfaction of their debts.

Being fully satisfied with the result reached, we affirm the judgment. All concur.