SAMUEL I. SMITH & Co., Respondents, v. THE
NATIONAL RAILWAY, ELECTRIC & INDUSTRIAL
EXPOSIrION ASSOCIATION, Appellant.

**Kansas City Court of Appeals, January 18, 1892.**

A Fair Association about to open its exposition found itself short of
necessary funds. To raise these, it agreed to set aside seventy-five
per cent. of its gate fees to indemnify its accommodation indorsers,
some of whom were members of its directory. *Held*, such
transaction did not even tend to prove a fraudulent transfer of its
property so as to hinder and delay its creditors and a demurrer to
the evidence should have been sustained.

*Appeal from the Buchanan Circuit Court.*— HON.
A. M. WOODSON, Judge.

REVERSED.

*Charles L. Simmons* and *Stephen S. Brown*, for
appellant.

*Mr. Vories,* for respondents.

GILL, J.—This is an appeal by the defendant from
a judgment sustaining an attachment against it. The
grounds of attachment were, *first*, that defendant had
fraudulently conveyed and assigned its property and
effects so as to hinder and delay its creditors; also, that
the association was about fraudulently to convey and
assign its property and effects so as to hinder and delay
its creditors. The issues made by the plea in abatement
were tried by the court below with the aid of a jury,
where there was a verdict in plaintiff's favor on both
grounds of attachment. At the close of the evidence,
the court refused an instruction offered in the nature of
a demurrer to the testimony, and this action by the
lower court is now mainly relied on for a reversal.

The defendant is a corporation organized in the year 1889 to conduct a fair and exposition at the city of St. Joseph, Missouri. A large amount of stock was subscribed and paid for by the citizens of St. Joseph, buildings were erected and preparations were going on to hold an exposition and a fair in the fall of the year. But just prior to opening the exposition a lack of funds was discovered, and the business men of the city and vicinity were requested to make further subscriptions or to lend their aid in raising money to meet the immediate wants of the association. They responded in this way: The exposition company executed various notes in amounts from $500 to $2,000 each and aggregating in all $11,000. These notes were made in terms payable to different individuals (who were thus willing to aid the corporation) and these persons separately then indorsed these notes, when the company took the same to the banks and there discounted them, thereby raising the needed funds. Some of these accommodation indorsers were members of the board of directors of the corporation.

As a condition upon which the indorsements were made, and without which they would not have been made, and without which the money would not have been raised, the company entered into an agreement with the indorsers to set aside seventy-five per cent. of all receipts of the exposition and turn it over to the committee of the indorsers to satisfy the notes, until said notes were paid. Under the agreement about forty per cent. was paid on these notes. About this time and during the period of the fair and exposition, and because of some misfortune and tardiness in paying the notes, some of the indorsers grew impatient, and threatened to close the enterprise. To avoid this, Craig, one of the company's directors, took up the said indorsed notes and held them to the close of the fair and exposition. This now was the condition of things, when, on

October 4, plaintiff, a creditor of the association, brought this attachment, alleging the grounds aforesaid.

I.   Respondents have not seen fit to file a brief, and we are, therefore, left in the dark as to their theory for the prosecution of this attachment.   As it appears to us the facts shown on this record did not justify the trial court in submitting the attachment issues to the jury, and the peremptory instruction directing a verdict for defendant should have been given.   It is difficult to understand why this was not done.   The attachment was likely based on the agreement of the association to set aside seventy-five per cent. of its gate receipts towards the liquidation of the several notes made by it and severally indorsed by said business men for its accommodation.   This was in part accomplished, it is true, and sufficient was thus collected and paid to amount to a forty-per-cent. credit on each note.   But all this did not, under the circumstances here admitted, even *tend* to prove that the defendant exposition association had fraudulently conveyed or assigned its property so as to hinder and delay its creditors.   It stands undisputed that these notes were executed, indorsed and negotiated for value and in entire good faith.   The business men of St. Joseph, in a commendable manner, thus lent their credit to the exposition company so as to bridge it over its distress; and, to secure themselves from loss, merely required the association to set aside of its income sufficient to liquidate the indebtedness.   There was in this neither actual nor constructive fraud, such as to justify attachment. Nor did it matter that some of the secured indorsers were members of the directory of the corporation.   So long as they acted in good faith to secure an honest debt, they will be protected.   *Foster v. Planing Mill Co.*, 92 Mo. 79–87, 89; s. c., 16 Mo. App. 150; *Kitchen v. Railroad*, 69 Mo. 224.   We are of the opinion then that the demurrer to plaintiff's evidence should have been sustained.   The judgment, therefore, of the circuit court is reversed.   All concur.